# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PINE INSTRUMENT COMPANY and PINE TEST EQUIPMENT, LLC, | ) ) ) | Docket No. |
| Plaintiffs | ) ) | |
| vs. | ) ) | **VERIFIED COMPLAINT IN EQUITY** |
| CONTROLS USA, INC. and GORDON BAKER, | ) ) ) | Filed on behalf of: Plaintiffs, Pine Instrument Company and Pine Test Equipment, LLC |
| Defendants | ) ) ) | |
| | ) | Counsel of record for this party: |
| | ) ) | Bryan G. Baumann, Esq. |
| | ) | PA ID No. 95046 |
| | ) | Neal R. Devlin, Esq. |
| | ) | PA ID No. 89223 |
| | ) | Julia M. Herzing, Esq. |
| | ) | PA ID No. 208258 |
| | ) | Knox McLaughlin Gornall & Sennett, P.C. |
| | ) | 120 West Tenth Street |
| | ) | Erie, PA 16501 |
| | ) | Telephone (814) 459-2800 |
| | ) | Facsimile (814) 453-4530 |
| | ) | Email  bbaumann@kmgslaw.com |
| | ) | ndevlin@kmgslaw.com |
| | ) | jherzing@kmgslaw.com |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PINE INSTRUMENT COMPANY and<br>PINE TEST EQUIPMENT, LLC,<br><br>       Plaintiffs<br><br>       vs.<br><br>CONTROLS USA, INC. and<br>GORDON BAKER,<br><br>       Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Docket No. |

## VERIFIED COMPLAINT IN EQUITY

Plaintiffs Pine Instrument Company and Pine Test Equipment, LLC, by and through their attorneys, Knox McLaughlin Gornall & Sennett, PC, files the following in support of its Verified Complaint in Equity:

## PARTIES, JURISDICTION AND VENUE

1.      Pine Instrument Company is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and maintains its principal place of business at 101 Industrial Drive, Grove City, Pennsylvania 16127.

2.      Pine Test Equipment, LLC is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania with a principal place of business at 101 Industrial Drive, Grove City, Pennsylvania 16127.  At all relevant times, Pine Test

Equipment was a wholly-owned subsidiary of Pine Instrument Company.  (Pine Instrument Company and Pine Test Equipment, LLC are hereinafter collectively referred to as "Pine".)

3.     Controls USA, Inc. ("Controls USA"), is a newly formed start-up corporation organized and existing under the laws of the State of Georgia and maintains its principal place of business at 1170 Peachtree Street, N.E., Suite 800, Atlanta, Georgia  30309 and 300 Petty Road, Suite E, Lawrenceville, Georgia  30043.

4.     Upon information and belief, Controls USA is a wholly-owned subsidiary of Controls, an Italian entity that, like Pine, provides testing equipment to the construction industry. Controls is headquartered in Milan, Italy.  Prior to the formation of Controls USA, Controls did not possess or maintain a significant business presence in the United States.

5.     Gordon Baker ("Baker"), is an adult individual formerly employed by Pine whom, upon information and belief, is now employed by Controls USA.  Upon further information and belief, Baker now resides in the State of Georgia.

6.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331, because this action contains a claim arising under the laws of the United States.  This Court has supplemental jurisdiction over Pine's state law claims pursuant to 28 U.S.C. §1367, because these claims are so inter-related to Pine's federal law claim as to form the same case or controversy.

7.     In addition, there is complete diversity of citizenship between the parties under 28 U.S.C. §1332, and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

8.    Venue is proper in this judicial district under 28 U.S.C. §1391 because a substantial portion the facts and circumstances giving rise to the instant action occurred in, and around, Mercer County, Pennsylvania.

## FACTUAL BACKGROUND

9.    Pine is a leading provider and producer of superpave and marshall asphalt testing equipment.  Pine also manufactures and sells electrochemistry research equipment and provides both design and contract electronic assembly services. These products and services are comprised of technically sophisticated components and materials that are necessary and vital to key end-user construction and other industrial markets.

10.    At all relevant times, Pine has maintained a prominent place in the concrete and asphalt testing industry and is recognized as a leading provider of this highly technical equipment and services both nationally and internationally.

11.    The Defendant, Controls USA is a direct competitor of Pine, in that Controls USA either directly, or through the assistance of its parent, Controls of Milan, Italy, manufactures and/or markets products and services that are the same or similar to those manufactured and/or marketed by Pine in the same marketplace.

12.    Throughout its history, Pine has developed and maintained valuable relationships with several customers and vendors alike.

13.     As part of developing and maintaining Pine's relationships with customers and vendors, Pine has compiled confidential lists containing highly valuable customer and vendor information.

14.     Pine has invested significant time and expense in research, design, testing, processes, development and protection of confidential and proprietary information, including new and innovative technologies, that relate to Pine's products and services.

15.     Accordingly, Pine has developed and maintained a significant amount of confidential, proprietary and trade secret information kept in electronic form, including, but not limited to, product and component engineering schematics and specifications; drawings; testing and calibration data; highly confidential information relating to patents obtained by Pine; product service guides; customer lists; customer order and service history; parts lists, software instructions and pricing worksheets (collectively "Pine Information").  This Pine Information is owned and/or utilized by each of Pine Instrument Company and Pine Test Equipment, LLC in furtherance of their collective business interests.

16.     The Pine Information is not generally available to the public and is not readily obtainable by proper means without the expenditure of large amount of resources and time, as Pine has done.  As such, the Pine Information has a significant independent economic value to Pine.

17.     Pine has taken and continues to take reasonable measures to keep this Pine Information confidential and, therefore, has a demonstrable protectable interest in maintaining such confidentiality.

4

18.     At the inception of employment, Pine provides each employee with an employee handbook that advises, *inter alia*, the employee of his or her affirmative obligation to maintain the confidentiality of the Pine Information.  The contents of the employee handbook, including the employees' confidentiality obligations, are periodically reviewed with Pine employees.  This review was most recently conducted on October 22, 2013.  Baker personally attended this most recent review.

Baker's Access to Pine Information

19.     In 1999, Pine hired the Defendant, Gordon Baker.  At that time, and times thereafter, Baker was provided a copy of the employee handbook, and reviewed and acknowledged his confidentiality obligations with respect to the Pine Information.

20.     In particular, Pine's employee handbook provides:

> Through your association with Pine, you may learn or acquire confidential, secret, and proprietary information that is to be used solely in the interest of Pine and is not for external distribution. Information and knowledge acquired in the course of your employment must not be used for individual benefit.

21.     In addition, at all relevant times, Pine utilized password protected networks to share accounts and databases.

22.     In order to access Pine Information employees, such as Baker, are required to enter a username and password to log in to Pine's network and database.

23.     Consistent with the foregoing, and in reliance upon Baker's assent to his confidentiality obligations, Pine placed Baker in a position of trust and confidence and provided him with access to the Pine Information in order to fulfill his job duties.

Baker Surreptitiously Exports the Pine Information

24.     Unbeknownst to Pine, sometime during the year 2013, Baker applied for a position with Pine's competitor, Controls USA.  This process culminated with Baker accepting employment with Controls USA on, or about, October 23, 2013.

25.     In addition to salary, Controls USA advised Baker that he would be eligible for certain bonuses based on company profitability as well as achieving certain benchmarks such as "establishing an efficient service network" and "selecting, identifying relationships with suitable suppliers aligned to the company's needs of adaptation/Americanization".

26.     Thereafter, Baker ceased acting in the interest of his employer, Pine, and instead, acted out of self-interest and in concert with, or at the direction of, Controls USA, as its agent.

27.     Rather than promptly advise Pine of his new employment, Baker instead began to systematically download and export highly confidential and proprietary information, including the Pine Information, to his personal AOL account.

28.     On October 25, 2013, just two days after Baker accepted his new position with Controls, Baker sent at least six (6) emails from his Pine corporate email account to his personal AOL email account.  Each of these emails contained several attachments, all of which contained Pine's highly confidential and proprietary information, including, but not limited to, internal drawings, parts lists, software instructions, pricing worksheets, customer lists as well as service history and shipment logs.

29.     On November 26, 2013 and November 27, 2013, Baker sent at least three (3) additional emails from his Pine corporate email account to his personal AOL email account.

Again, each of these emails contained attachments that included Pine Information, including Pine's highly confidential and proprietary information, Pine's list of contacts, internal Pine information, and Pine's research data.

30.     Throughout December, 2013 and prior to notifying Pine of his intent to resign from his employment, Baker continued to send emails to his personal AOL email account, including, but not limited to, emails dated December 3, 4, 16, and 18, 2013, each containing Pine Information in various forms, including, but not limited to, Pine's list of contacts, sensitive technical data related to Pine products, and Pine's pricing information.

31.     Baker did not give Pine notice of his intent to terminate his employment until December 20, 2013, nearly two months after he accepted employment with the Defendant, Controls USA.

32.     Even after December 20, 2013, Baker continued to systematically and nefariously send emails with dozens of attachments that contain highly confidential and proprietary information, including emails dated December 24, 2013, December 30, 2013 and January 2, 2014.  Baker continued this course of conduct right on through his last day of employment with Pine, on January 3, 2014.

33.     Baker also sent over 900 MB of data to European-based cloud repositories.

34.     Upon information and belief, based on the foregoing and, in particular, the type of information Baker downloaded and exported, Pine alleges that Controls USA was complicit with Baker's course of conduct.

35.    The collective conduct of Baker and Controls USA in this respect was illegal, unjustified, and intended to unjustly benefit Baker and Controls USA to Pine's extreme detriment.

36.    Based on the facts and circumstances surrounding Baker and Controls USA's conduct, Pine reasonably believes that Baker and Controls USA intends to utilize the Pine Information and other ill-gotten information in furtherance of Baker's new employment at Controls USA and elsewhere.

37.    As a start-up company with no prior business presence in the United States, Controls USA stands to benefit greatly from the information and data Baker has obtained, which Pine worked for decades and spent millions of dollars to compile.

38.    Thus, Baker's continued efforts and actions, through and on behalf of Controls USA, will result in immediate and irreparable harm to Pine.

39.    Baker and/or Controls USA's exposure to Pine's existing customer-base, after improperly obtaining the Pine Information, will impose significant strain on Pine's customer relationships.

40.    Baker obtained confidential information for most, if not all, of Pine's customers and vendors and, as a result, can use such information to Pine's detriment.  Further, Baker obtained intimate knowledge regarding Pine's cost structure, margin structure, and product design details, the use of which Baker and/or Controls USA would prove detrimental to Pine's competitiveness in the marketplace.

41.     Simply put, permitting Baker to continue to maintain employment with Controls USA subsequent to his improper transmission and disclosure will facilitate his ability to convert Pine's customers to Controls USA.

42.     In the event Baker is able to effectuate customer defections, it will cause irreparable damage to the relationships and good will maintained by Pine with its customer base.

43.     Baker's flagrant violation of his duties to Pine will result in immediate and irreparable injury, loss and damage that cannot be fully compensated by monetary damages if Baker is not enjoined from continuing this course of behavior. Specifically, as set forth above, Pine will suffer loss and disclosure of its highly confidential and proprietary property pertaining to information about Pine's business activities, including but not limited to information regarding customers, cost structures, pricing, internal profit and loss, customer order history, product design schematics, internal drawings, product testing data and internal service documents, which Pine has expended considerable time and resources in developing. Accordingly, greater harm would result from denying the preliminary injunction than by granting it.

## COUNT I - TEMPORARY RESTRAINING ORDER
*(Pine Instrument Company and Pine Test Equipment, LLC*
*v. Controls USA, Inc. and Gordon Baker)*

44.     Pine repeats and restates the foregoing Paragraphs of this Verified Complaint in Equity, as if fully set forth herein.

45.     At all relevant times, Pine has maintained the Pine Information and other confidential and trade secret information for its exclusive use and benefit.

9

46.     Baker and Controls USA's misappropriation, use and dissemination of this information is certain and inevitable.  Such misappropriation, use and dissemination will cause extreme prejudice and damage to Pine.

47.     If the requested restraining order is not immediately entered, Pine faces a very real and imminent threat that its confidential and trade secret will be used for the benefit of Baker and Controls USA to Pine's extreme detriment.

48.     The requested restraining order will not prejudice either Baker or Controls USA because the information at issue is the sole and exclusive property of Pine and the requested restraining order will merely restore the status quo until such time as this court may preside over a hearing on Pine's Motion for Preliminary Injunction.

## COUNT II - VIOLATION OF FEDERAL RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT – 18 U.S.C. § 1962
### *(Pine Instrument Company and Pine Test Equipment, LLC v. Controls USA, Inc. and Gordon Baker)*

49.     Pine repeats and restates the foregoing Paragraphs of this Verified Complaint in Equity, as if fully set forth herein.

50.     The federal Racketeer Influenced and Corrupt Organizations Act (RICO) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

51.     A civil cause of action for violations of RICO is established under 18 U.S.C. § 1964, which provides in relevant part: "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue… and shall recover threefold damages he sustains and the cost of the suit, including a reasonable attorney's fee."

18 U.S.C. § 1964(c)

52.     For purposes of establishing a civil cause of action under RICO, an enterprise is defined as including "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

18 U.S.C. § 1961(4)

53.     At all relevant times, Controls USA was an enterprise as defined under RICO engaged in, and whose activities affected, interstate and foreign commerce.

54.     At all relevant times, and since at least October 24, 2013, Baker was associated with Controls USA and has conducted or participated in the affairs of Controls USA through a pattern of racketeering activity.

55.     Baker and Controls USA associated together for a common purpose of misappropriating, misusing and disseminating the Pine Information and other confidential information regarding Pine's business for the purpose of harming Pine and advancing the competing business interests of Controls USA.

56.     This pattern of racketeering activity is evidenced through Baker and Controls USA's use of interstate wires and wire-based communication systems to disseminate certain confidential, trade secret and other information that Pine compiled in the course and conduct of

11

its business, to which Pine has the exclusive right to, use and benefit from, in furtherance of a scheme to deprive Pine of said exclusivity and benefit through false or fraudulent pretenses in violation of 18 U.S.C. § 1343.

57.     Further disclosure, dissemination and use of the Pine Information and other information the Defendants obtained is certain and inevitable.

58.     Controls USA is a newly formed entity.  Upon information and belief, and unlike its parent, Controls of Milan, Italy, Controls USA does not have any viable research, development or manufacturing personnel or capability within the United States.  Therefore, disclosure of the highly-technical product research and development data will likely be utilized by Controls USA's parent, Controls in one of its numerous locations worldwide, in Italy, France, the United Kingdom, Poland, Spain or Mexico.

59.     This future disclosure, dissemination and use of Pine's information, coupled with the various locations occupied by Controls USA and its parent, Controls, will require the continued use of the wires in violation of  18 U.S.C. § 1343.

60.     Thus, there is a real and genuine threat of continuing misconduct in the future.

61.     All of the predicate acts described above were related so as to establish a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5) and were perpetrated with the common purpose to harm Pine for the benefit of Baker and Controls USA.

62.     As a direct and proximate result of, and by reason of, the activities of Baker and Controls USA described above, and their conduct in violation of 18 U.S.C. § 1962(c), Pine has

sustained, and will continue to sustain injuries to its business and property, within the meaning of 18 U.S.C. §1964(c).

63.    As a direct and proximate result of Baker and Controls USA's conduct, Pine is entitled to recover threefold any and all damages sustained, together with the cost of suit, including reasonable attorneys' fees.

## COUNT III - COMPUTER FRAUD AND ABUSE ACT – 18 U.S.C. § 1030
*(Pine Instrument Company and Pine Test Equipment, LLC*
*v. Controls USA, Inc. and Gordon Baker)*

64.    Pine repeats and restates the foregoing Paragraphs of this Verified Complaint in Equity, as if fully set forth at length herein.

65.    The Computer Fraud and Abuse Act ("CFAA") makes it unlawful for any person to intentionally access a protected computer without authorization and, as a result of such conduct, cause damage of at least $5,000. 18 U.S.C. § 1030(a)(5)(A).

66.    The CFAA permits any person who suffers damage or loss by reason of a violation of 18 U.S.C. § 1030(a)(5)(A) to maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief.

67.    Each of Baker and Controls USA, acting through its agent, Baker, intentionally accessed Pine's protected computers and network without authorization and, as a result of such conduct, caused damage of at least $5,000.  Among other things, Baker and Controls USA misappropriated Pine's electronically stored, confidential and proprietary information and materials, doing so deliberately and with the intention to harm the business of Pine and to gain an

13

unfair competitive advantage for competing business Baker has established.  At the time Baker accessed the Pine Information for his personal benefit and that of Controls USA, Baker lacked authorization to access the Pine Information for that purpose, or any other purpose benefitting any individual or entity other than Pine.

68.     By reason of the acts alleged herein, Pine has been damaged in amounts to be determined at trial.  Moreover, because Pine's remedy at law is inadequate, Pine likewise seeks injunctive relief to protect its confidential and proprietary information and other legitimate business interests.

## COUNT IV - PENNSYLVANIA UNIFORM TRADE SECRETS ACT
*(Pine Instrument Company and Pine Test Equipment, LLC*
*v. Controls USA, Inc. and Gordon Baker)*

69.     Pine repeats and restates the foregoing Paragraphs of this Verified Complaint in Equity, as if fully set forth at length herein.

70.     Each of Baker and Controls USA are "persons" as defined by the Pennsylvania Uniform Trade Secrets Act ("PUTSA"), 12 Pa.C.S.A. § 5301, et seq.

71.     The Pine Information is comprised of valuable trade secrets and confidential proprietary business information relating to Pine's business of manufacturing, selling and servicing asphalt and concrete testing equipment as well as design and contract electronic assembly services to highway departments, universities the Federal Highway Administration as well as several Fortune 500 companies and smaller manufacturers.

72.     Pine has spent significant time and money developing its trade secrets and confidential and proprietary information and has taken steps to protect this information from disclosure, including by requiring employees who have access to this type of information to maintain its confidentiality.

73.     Disclosure of this type of information to Pine's competitors, especially a new start-up competing business, would undermine Pine's competitive position in the marketplace.

74.     Upon information and belief, since Baker accepted employment with Controls USA, both Baker and Controls USA have misappropriated, misused and disclosed the Pine Information and other confidential and proprietary trade secret information, and continue to do so in competition with Pine and in furtherance of Controls USA's business.

75.     Each of Baker and Controls USA's conduct is willful, intentional, malicious, unprivileged, and in bad faith, and has caused (and will continue to cause) immediate and irreparable harm to Pine, as well as causing Pine to suffer other compensatory damages in excess of $75,000.

## COUNT V - TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
*(Pine Instrument Company and Pine Test Equipment, LLC
v. Controls USA, Inc. and Gordon Baker)*

76.     Pine repeats and restates the foregoing Paragraphs of this Verified Complaint in Equity, as if fully set forth at length herein.

77.     Pine currently has a number of contractual relations with customers identified in the Pine Information Baker obtained.

78.     Because of the nature of the industry and the strong customer relationships that have been developed over time, Pine has a reasonable expectation of a prospective contractual relationship with a number of customers and prospective customers included in the Pine Information Baker surreptitiously obtained.

79.     Neither Baker nor Controls USA can demonstrate any privilege or justification to interfere with the contractual or prospective contractual relationships Pine has with its customers or prospective customers.

80.     Upon information and belief, Baker and Controls USA, through Baker's intentional acts, have intentionally interfered with the contractual and/or prospective contractual relationships that Pine has with its customers and prospective customers.

81.     Baker and Controls USA's conduct has caused and will continue to cause harm to Pine by damaging its contractual and prospective contractual relationships with its customers, harming Pine's goodwill, disclosing its trade secret and confidential information, proprietary business information and causing it to suffer other compensatory damages in excess of $75,000.

### COUNT VI - UNFAIR COMPETITION
*(Pine Instrument Company and Pine Test Equipment, LLC*
*v. Controls USA, Inc. and Gordon Baker)*

82.     Pine repeats and restates the foregoing Paragraphs of this Verified Complaint in Equity, as if fully set forth at length herein.

83.     Baker and Controls USA, by engaging in the conduct described above, have engaged in unfair competition with Pine.

16

84.     This conduct has caused and will continue to cause damage to Pine's s goodwill, customer relationships, prospective customer relationships, contractual relationships, product design and integrity and other valuable business interests.

85.     Pine has the right to be free from unfair competition caused by the Defendants' misuse of Pine's confidential and proprietary information.

86.     The Defendants' acts of unfair competition are willful, wanton and malicious conduct, which have caused, and will continue to cause, Pine to suffer immediate, irreparable harm.

87.     The Defendants' conduct, as described above, is contrary to honest industrial and commercial practices.

### COUNT VII - BREACH OF FIDUCIARY DUTY/DUTY OF LOYALTY
*(Pine Instrument Company and Pine Test Equipment, LLC v. Gordon Baker)*

88.     Pine repeats and restates the foregoing Paragraphs of this Verified Complaint in Equity, as if fully set forth at length herein.

89.     At all times during his employment with Pine, Baker occupied a position of trust and confidence, which provided Baker with access to the Pine Information and other confidential and proprietary trade secret information.

90.     As a result, Baker owed Pine fiduciary duties and a duty of loyalty.

91.     Those duties existed while Baker continued to work for, and receive compensation from, Pine through the last date of his employment on January 3, 2014.

17

92.     Baker's conduct, as described above, constitutes a breach and continuing breach of his fiduciary duties and duty of loyalty.

93.     Baker's conduct has been, and continues to be, willful, intentional and unprivileged and has caused and will continue to cause Pine to suffer immediate, irreparable harm.

94.     Unless restrained by this Court, Baker will continue his unlawful actions, and Pine will be irreparably harmed.

95.     As a proximate result of Baker's s unlawful conduct, Pine has suffered damages in an amount which cannot be ascertained at present, but exceed $75,000.

96.     Pine has no adequate remedy at law and is entitled to a temporary restraining order, a preliminary injunction and a permanent injunction, enjoining Baker, and any company on whose behalf he is acting, from further unlawful acts.

### COUNT VIII - CONVERSION OF CONFIDENTIAL INFORMATION
*(Pine Instrument Company and Pine Test Equipment, LLC*
*v. Controls USA, Inc. and Gordon Baker)*

97.     Pine repeats and restates the foregoing Paragraphs of this Verified Complaint in Equity, as if fully set forth herein.

98.     Each of Baker and Controls USA have misappropriated, misused and disclosed, by improper means, the Pine Information and other confidential information about Pine's business for the purpose of advancing the rival business interest of Controls USA.

18

99.     As a direct and proximate result of Baker and Controls USA's conduct, Pine has

been deprived of the exclusive right to, use and benefit from, the Pine Information and other

information obtained by Baker and Controls USA without justification or Pine's consent.

100.    This conduct has caused and will continue to cause harm to Pine, including, but

not limited to, damage to Pine's goodwill, customer relationships, prospective customer

relationships, contractual relationships, product design and integrity and other valuable business

interests.

### COUNT IX - CIVIL CONSPIRACY
*(Pine Instrument Company and Pine Test Equipment, LLC*
*v. Controls USA, Inc. and Gordon Baker)*

101.    Pine repeats and restates the foregoing Paragraphs of this Verified Complaint in

Equity, as if fully set forth herein.

102.    Each of Baker and Controls USA, with a common purpose planned, agreed and

participated in a scheme to unlawfully access, download, export, misappropriate, misuse and

disclose the Pine Information and other confidential information about Pine's business for the

purpose of harming Pine and unjustly advancing the rival business interest of Controls USA.

103.    In furtherance of this scheme, Baker and Controls USA took affirmative action by

accessing, downloading, exporting, misappropriating misusing and disclosing the Pine

Information.

104.    As a direct and proximate result of Baker and Controls USA's conduct, Pine has

sustained and will continue to sustain damages including, but not limited to, damage to Pine's

goodwill, customer relationships, prospective customer relationships, contractual relationships,

product design and integrity and other valuable business interests.

## PRAYER FOR INJUNCTIVE AND MONETARY RELIEF

WHEREFORE, Pine Instruments Company and Pine Test Equipment, LLC requests that

this Court enter judgment against Gordon G. Baker and Controls USA, Inc. as follows:

(a) That a temporary restraining order and subsequent preliminary and permanent injunction be entered mandating that Gordon G. Baker and Controls USA, Inc. return all tangible Pine Instrument Company and/or Pine Test Equipment, LLC property in their possession within five (5) days;

(b) That an accounting be ordered providing for the location and identification of any and all information owned by Pine Instruments Company and/or Pine Testing Equipment, LLC, whether electronic or otherwise, in the possession of Gordon G. Baker and Controls USA, Inc., including, but not limited to, a complete forensic accounting of any and all devices, email accounts, cloud-based accounts or other potential repositories for said information, to be completed by an appropriate forensic analyst selected by the Plaintiff, to be completed at the Defendants' expense;

(c) That a temporary restraining order and subsequent preliminary and permanent injunction be entered mandating that any Pine Instrument Company and/or Pine Testing Equipment, LLC information identified through the forensic examination be permanently and irretrievably deleted and destroyed;

(d) That a temporary restraining order and subsequent preliminary and permanent injunction be entered prohibiting Gordon G. Baker and/or Controls USA, Inc. from directly or indirectly using any confidential, proprietary or trade secret information of Pine Instrument Company, in any format, for any purpose whatsoever;

(e) That a temporary restraining order and subsequent preliminary and permanent injunction be entered prohibiting Baker from engaging in, or having a financial interest in, any business that competes directly or indirectly with that of Pine Instrument Company or Pine Testing Equipment, LLC for a period of two (2) years;

(f)      An award of monetary damages, including any incidental or consequential damages, lost profits, statutory damages, treble damages, punitive damages, attorneys' fees, interest, costs, and any and all further relief this Court deems just and proper.


Respectfully submitted,

KNOX McLAUGHLIN GORNALL & SENNETT, P.C.


BY:   */s/Bryan G. Baumann*
        Bryan G. Baumann, Esq.
        Neal R. Devlin, Esq.
        Julia M. Herzing, Esq.
        120 West Tenth Street
        Erie, Pennsylvania 16501
        (814) 459-2800

        Attorneys for Plaintiffs,
        Pine Instrument Company and
        Pine Testing Equipment, LLC

# 1446794.v1